IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL PARKS,** | : | **CIVIL NO. 1:CV-13-2912** |
| Petitioner | : | (Judge Rambo) |
| v. | : | |
| **A. JORDAN,** | : | |
| Respondent | : | |

# MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed by Petitioner Darrell Parks, an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). (Doc. 1.) Petitioner alleges that his constitutional rights were violated in the context of a disciplinary proceeding. In addition, Petitioner claims that he now faces a potential denial of parole as a "collateral consequence" of prison officials' failure to follow the Bureau of Prisons' ("BOP") policies and procedures with respect to his disciplinary hearing. He also claims that he was denied his right to privacy when his misconduct was discussed in the presence of staff and other inmates. As relief, he requests that his incident report be expunged and injunctive relief. For the reasons that follow, the petition will be denied.

**FILED**
HARRISBURG, PA

FEB 7 - 2014

I.   **Facts**

On October 25, 2012, at approximately 7:43 p.m., while conducting a range tour on the third floor of USP-Lewisburg's C-Block, Corrections Officer K. Grose walked past cell 307 and observed Petitioner standing in his window on the seat of his desk and "he was stroking his erect penis with his right hand." Officer Grose ordered him to stop his actions[, at which time Petitioner] looked at [her] and smiled and he continued to masturbate in front of [the officer]. (Doc. 6-1 at 19.)

As a result of this incident and after an investigation, Petitioner was issued an incident report on October 25, 2012, charging him with Engaging in a Sexual Act, in violation of Section 205 of the BOP's disciplinary code, and Refusing to Obey a Direct Order, in violation of Section 307 of the BOP code. (*Id.*) Petitioner was advised of his rights and stated he understood them. (*Id.* at 20.) The investigating officer noted that Petitioner had "no comment," and that he displayed a poor attitude during the investigation. (*Id.*) Further, the investigator noted,

> Based on the information provided in section 11 of this report [(description of incident)], and the inmate refusing to provide any mitigating evidence, or extenuating circumstances, [i]t is this investigator's opinion that the incident report is warranted and accurately describes the prohibited act.

(*Id.*) The incident report was delivered to Petitioner at 8:30 p.m. that same day. (*Id.* at 19.)

2

On October 31, 2012, the Unit Disciplinary Committee ("UDC") held a hearing on Petitioner's charges. (*Id.*) Petitioner provided a written statement, and the UDC subsequently referred the charges to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id.*) Further, at the UDC hearing, Petitioner refused to sign the "Inmate Rights at Discipline Hearing" form, which informed him that since he was charged with a violation of BOP rules or regulations, the matter was being referred to the DHO for disposition. (*Id.* at 22.) Petitioner also refused to sign the "Notice of Discipline Hearing Before the DHO" form. (*Id.* at 21.) On that form, Petitioner declined the services of a staff representative and requested three witnesses at the DHO hearing. (*Id.*)

The DHO held a hearing on January 7, 2013. (*See id.* at 12-18.) At the hearing, Petitioner acknowledged that he understood his rights before the DHO. (*Id.* at 12.) He waived staff representation, and requested that three witnesses testify and video evidence be preserved. (*Id.*) Petitioner provided the following verbal statement, as described by the DHO: "Inmate Parks testified that Section 11 of the incident report is completely inaccurate. Inmate Parks verbally testified everything is in my written statements. [The reporting officer] didn't describe my penis in the report, because of its condition." (*Id.*) In addition, Petitioner provided the following written statements. The first statement, dated October 26, 2012, stated, in pertinent part, as follows:

3

> I aver that I may have said something inappropriate or disrespectful, but I was not masturbating.
>
> * * *
>
> As I've annunciated that [reporting officer] did not say anything to me and they will show that she either knocked or kicked the cell door because I had a sheet up blocking you from seeing inside the cell while my celly and I was talking. In other words, she did not stand in front of cell C-307 saying anything to me.

(*Id.* at 12-13.) In that statement, Petitioner requested three witnesses. (*Id.* at 13.) In his second written statement dated November 11, 2012, Petitioner stated the following, in pertinent part:

> In my defense, this is a fabricated report to inflict harsher punishment upon the then what my conduct warranted because I did not and could not have pulled this feat off. The desk are welded to the wall in front of the bed and away from the window [is] the stool or seat is connected to it. Moreover, [reporting officer] goes further to say "I ordered inmate Parks to stop his actions and he looked at me and smiled and he continued to masturbate in front of me." She gave no such order for the reasons that this did not happen. If this had happen, the Latin men in the cell in front (to an angle) and black dudes (directly) in front of cell 307 would had wrote yelled at DC dudes wanting to bring some serious harm to me for disrespecting them, if I had been in the cell's window. What I intend to prove with the camera is, when she made her first round I stopped her to ask if I could speak with her when things calm down. She said, "yes." Then, after chow was served picked up and it was either her first or maybe second round after count was conducted I had pulled her to the side of the cell door asking if I could get her opinion on a po[em] that I'm sending to my son's mother. I explained that it isn't anything of a sexual nature. She listen to the poem and I asked her to let me know what she think of it when she make her next round. This was around

4

> 6:00 p.m. Well, if I can recall correctly, she had made about two rounds after that before I had said anything to her. On her second round she had passed my cell's door and I called her when she was on the other side of the range coming from the rear (from cell 314 going off in numbers) of the range when I called her to the cell door maybe making inappropriate or disrespectful comments as I said, "you trailer park trash cunt?? You are here fucking out of both ears. You don't have to give me your opinion . . . slut!! (She walked away and I continued saying) you should have been the one you are mother swallowed!!!" A lot of prisoners were laughing. Nonetheless, as you are aware, you all have marked all of us prisoners coming from G-Block. And insolence report does not carry the effect of an incident report written for engaging in a sexual act (masturbation). I had put up a sheet so she can not look in the cell and my celly and I were talking. I did this because, if a staff come by they would have to ask that that she be taken down in order to see us. This failed me because she still claimed that I was masturbating in her presence. I am level two and it is awfully strange that, while in C-Block they have the female psych., Range officer, Ms. Houser, education staff and case manager, hell . . . Even better, while in G-Block before moving to C-Block, Ms. Mack, Dufy will not engage in that kind of behavior because I got four more months before I go to level three to leave here and never come back! This incident report or anyone 100 or 200 disciplinary infractions will cause me my level two put me back on day one phase one or level 1. I did not stand in the window, nor any place else, on the seat of the desk stroking my penis, as a request also to submit to a polygraph test and she do the same.

(*Id.*)

With respect to Petitioner's witnesses, the DHO noted that the first witness, an inmate Hill, provided the following statement:

> What he [(Parks)] said is true. He snapped and cussed her out. We put the sheet up for the next round, and when she came around she kicked the door and moved on. The next thing I knew I was going through my

5

> stuff, and staff came back and told us to pack our property and that we were moving to G block.

(*Id.* at 14.) Petitioner's other two witnesses were no longer incarcerated at USP-Lewisburg, but statements by these witnesses were obtained for the DHO hearing. (*Id.*) Chandler, an inmate who was interviewed on December 19, 2012, "did not seem to know who [Petitioner] . . . was and did not recall the date/time of the incident, nor an issue of the alleged masturbation or an inmate having a cell window covered." (*Id.*) Kelly, an inmate who was interviewed on December 17, 2012, stated the following, as reported by a staff member:

> Kelly stated he is aware of the incident. Kelly stated he was [in] cell next to inmate Parks. Kelly stated all he heard and saw was the CO kick the door and tell Parks to take the sheet down. Kelly stated he noticed this through the side of the door of his cell. Kelly stated after he saw the CO kick the door, he put his headphones on to drown out the noise in the unit. Kelly stated he didn't know what happened after that.

(*Id.*)

As to Petitioner's request for video surveillance, the DHO provided a statement that due to administrative error, the video surveillance was not preserved. (*Id.* at 15.) However, the DHO determined that such video evidence would not have been exculpatory because it would not have documented Petitioner's actions in his cell and it contained no audio component so would not have recorded any spoken communication between Petitioner and the reporting officer. (*Id.*)

6

The DHO relied on the incident report and investigation, as well as Petitioner's statements and the statements of his witnesses, to conclude that, by a greater weight of the evidence, Petitioner had committed the Code 205 violation, Engaging in a Sexual Act. (*Id.* at 15-18.) The DHO did not sustain the Code 307 violation, Refusing an Order. (*Id.* at 16.) Specifically, in giving greater weight to the statement of the reporting officer, the DHO concluded the following, in pertinent part:

> No evidence was found to support your claim that the reporting officer fabricated this incident report because you covered your cell door window or made inappropriate remarks to her. Your collective testimony is considered by the DHO as a diversion, and your attempt to substantiate that the reporting officer did not apply the appropriate charges in section 11 of this incident report. The DHO also considers your testimony as your attempt to minimize your conduct in order to avoid the consequences of your actions. The reporting officer was merely acting in the routine performance of her duties and has nothing to gain from fabrication of the charge. You, on the other hand seem compelled to revise the events as described in the body of the incident report to avoid the consequences of your actions. The DHO cannot accept as fact that Bureau of Prisons staff members would risk their employment with the Federal Bureau of Prisons, as well as possible criminal charges, simply to issue this incident report without justification, as is your contention. You, however, stand to gain by being less than completely honest regarding the facts of the incident in order for you to avoid being sanctioned for your commission of this repetitive prohibited act.
>
> \* \* \*
>
> The DHO considers your collective testimony to be less credible than that to which the greater weight is given in this case, for the following reasons. First, it is entirely plausible the reporting officer witnessed your

> actions as presented in the incident report. Specifically, she was very specific concerning your depraved conduct. You have an extensive disciplinary history of committing sexual acts while being incarcerated in the Bureau of Prisons. Although this information is not exclusively being used to determine you were stroking your erect penis in this case, it does bolster the DHO's belief you have demonstrated your ability to victimize female staff members sexually in the past. The greater weight of the evidence supports you masturbated to the reporting officer, using her as visual stimulation. Accordingly, based on the eyewitness evidence, the DHO has concluded that the greater weight of the evidence supports you committed the prohibited act charged.

(*Id.* at 17-18.) As a result, the DHO sanctioned Petitioner with thirty (30) days of disciplinary segregation and a seven (7) month loss of commissary, and telephone and visiting privileges. (*Id.* at 18.) A copy of the DHO's report was provided to Petitioner on January 29, 2013. (*Id.*)

## II. <u>Discussion</u>

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8.[1] These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the

---

[1] The BOP revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011.

8

investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. (*Id.*) If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. (*Id.*) Because Petitioner was charged with Engaging in a Sexual Act, an offense in the high severity category, the matter was referred for a disciplinary hearing.

High category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.3. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

In his petition, Petitioner challenges the sufficiency of the evidence used to find him guilty of the Code 205 violation.[2] He also claims that the investigating officer and UDC violated his privacy rights by discussing his charges in front of staff and other inmates. The court first will address all of the procedural requirements in Petitioner's case, including whether he faces "collateral consequences," (*see supra* note 2, at 10), followed by a discussion of whether Petitioner is entitled to relief on his privacy claim.

A. **Procedural Requirements for Disciplinary Proceedings**

1. **Sufficiency of the Evidence**

The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is

---

[2] In response to the petition, Respondent argues that the petition should be dismissed for lack of subject matter jurisdiction because Petitioner was not sanctioned with loss of good conduct time, and thus his sanctions do not affect the duration of his confinement. (Doc. 6.) While this appears to be the case here, Petitioner also argues that because he was found guilty of the Code 205 violation, as a "collateral consequence" he will soon be denied parole. (Doc. 1 at 2.) In connection with this argument, Petitioner contends that he is innocent of the charge and asks the court to expunge the incident report. (*See id.*) Because Petitioner has raised this contention that, arguably, speaks to the duration of his confinement, it is necessary for the court to determine whether the due process requirements with respect to Petitioner's disciplinary proceedings were met. Obviously, if those due process requirements have been met, Petitioner's "collateral consequences" argument based on his actual innocence will fail. Thus, the court will retain jurisdiction and address the merits of the petition.

met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id.*

In the instant case, Petitioner alleges that the evidence was not sufficient for a finding of a Code 205 violation. (Doc. 1.) However, the record belies this assertion. The DHO specifically noted that he considered the incident report and investigation, as well as Petitioner's own statement and statements of his three witnesses. (Doc. 6-1 at 15-18.) Although the DHO recognized that due to an administrative error, video surveillance was no longer available, even so, that evidence would not have aided Petitioner's defense. (*Id.* at 15.) Instead, the DHO credited the reporting officer's account of the incident over those of Petitioner and his witnesses, and found the charge to be supported based on the greater weight of evidence cited in the report. (*Id.*) Thus, in light of the evidence presented to the DHO, who made a credibility determination as to guilt, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation, as well as the DHO's conclusion made to Petitioner "that your testimony [is] your attempt to minimize your conduct in order to avoid the consequences of your actions," (*Id.* at 17), confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the

petition will be denied with respect to Petitioner's claim that there was insufficient evidence to support the DHO's decision.

### 2. Notice of Charges and Investigation

The record demonstrates that Petitioner received adequate notice of the incident report from the investigating officer. (Doc. 6-1 at 19.) Under 28 C.F.R. § 541.5(a), "A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." *Id.* The record in this case reflects that Petitioner received notice of the charges against him at 8:30 p.m. on October 25, 2012, within 24 hours of the incident which took place at 7:43 p.m. that same day. (Doc. 6-1 at 19.)

Additionally, the record reflects that the charges against Petitioner were promptly investigated. (*Id.* at 19-20.) Following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.5(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the

regulation claimed to be violated" in order to obtain habeas relief). The record reflects that a BOP official, N. Carper, completed an investigation on October 25, 2012, within 24 hours of the incident. (Doc. 6-1 at 20.) Petitioner was provided with the incident report on that same day. (*Id.* at 19.) In addition, at the UDC hearing, Petitioner was advised of his rights and provided with the "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing Before the DHO" forms, both which he refused to sign. (*Id.* at 21-22.) Since the record shows that an investigation was conducted by a BOP official in a prompt manner and Petitioner was timely delivered the incident report, the court concludes that Petitioner was not prejudiced by a violation of BOP regulations, such as a failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### 3.     Representation at DHO Hearing

The record reflects that Petitioner was given the opportunity to have staff representation at the DHO hearing. (*Id.* at 12, 21.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceedings. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996). *See also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it

unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. In this case, it is documented that Petitioner waived his right to staff representation at the DHO hearing. (Doc. 6-1 at 12, 21.) The DHO report also indicates that at the outset of the hearing, Petitioner was advised of his rights and he indicated that he understood those rights. (*Id.*) Petitioner now claims that the DHO denied his request for staff representation, and as a result, he was not able to view the video surveillance and obtain witness statements. (Doc. 1 at 8-9.) However, there is nothing in the record indicating that Petitioner at any time requested staff representation prior to or at the DHO hearing. (Doc. 12-18.) In fact, on the "Notice of Discipline Hearing before the DHO" form, which Petitioner did not sign, Petitioner noted that he was declining staff representation at the DHO hearing. (*Id.* at 21.) Further, Petitioner's argument that a staff representative would have enabled him to view video surveillance and obtain witness statements is baseless in light of the facts on record that video surveillance did not exist. Moreover, Petitioner requested witnesses who actually did provide testimony before the DHO. (*Id.* at 14-15.) As such, Petitioner's self-serving argument with respect to denial of staff representation fails. Finally, as there is no allegation that Petitioner is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

14

### 4.  Statement, Witnesses, and Documentary Evidence

The record reflects that prior to the DHO hearing, Petitioner was advised of his rights with regard to making a statement and presenting witness testimony and documentary evidence, and indicated that he understood. (Doc. 6-1 at 12.) First, the court notes that Petitioner made not only a verbal statement at the DHO hearing, but also presented two prior written statements. (*Id.* at 12-14.) There is nothing in the record reflecting that Petitioner was prevented from providing additional testimony. Further, with respect to witnesses, it is noted initially that the DHO is not required to call witnesses. "The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available. However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials." 28 C.F.R. § 541.8(f)(2). Here, the DHO heard verbal testimony from one inmate witness and considered two written statements from other inmates. (Doc. 6-1 at 14.) Petitioner requested these three witnesses, and their statements were considered by the DHO in his decision. (*Id.* at 14-18.) Although Petitioner requested video surveillance of the incident, the DHO noted that video evidence was no longer available due to an administrative error. (*Id.* at 15.) The DHO noted, however, that had that video evidence been retained, it would not have been exculpatory because it neither showed Petitioner's actions in his cell nor contained any accompanying audio with Petitioner's alleged spoken

communication with the reporting officer. (*Id.*) In the absence of unavailable video surveillance, the DHO did rely on the incident report and investigation, as well as Petitioner's statements and those of his witnesses, in making his decision. As a result, the court cannot find that the lack of further witness testimony and further documentary evidence at the DHO hearing resulted in a violation of Petitioner's due process rights. The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony and documentary evidence.

### 5. Sanctions

The record reflects that the sanction imposed by the DHO is within the limits prescribed in BOP regulations. (*Id.* at 18.) The sanctions that may be imposed upon a finding of guilt of a high category offense include, *inter alia*, recommendation of parole date rescission or retardation, forfeiting earned statutory good time, up to six (6) months of disciplinary segregation, loss of privileges, and monetary fines. 28 C.F.R. § 541.3. Petitioner is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, Petitioner's penalties plainly fall "within the expected perimeters of the sentence imposed by a court of law," and does not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary

infractions, the petition will be denied with respect to any challenge to the sanctions imposed.

### 6. "Collateral Consequences" of Incident Report Findings

As stated herein, (*see supra* note 2, at 10), in connection with his challenge to the disciplinary proceedings, Petitioner also argues that because he was found guilty of the Code 205 violation, as a "collateral consequence" he will soon be denied parole. (Doc. 1 at 2.) Specifically, Petitioner asks the court to expunge the incident report based on his innocence in order to relieve him of the "collateral consequence" of an upcoming parole denial. (*See id.*) However, as set forth herein, the court has concluded that not only did the DHO act with a sound evidentiary basis in determining Petitioner's guilt of the Code 205 violation, but also all other procedural requirements with respect to Petitioner's DHO hearing were met. Therefore, in light of DHO's findings, the court need not address whether Petitioner will face the "collateral consequences" of which he contends. This claim fails.

### B. Privacy Claim

Petitioner also claims that the investigating officer and UDC violated his privacy rights when they discussed the misconduct and incident report with Petitioner in the presence of other staff and inmates. In *Hill v. Thomas*, Civ. No. 3:CV-130469, 2013 WL 1386633, at *4-5 (M.D. Pa. Apr. 4, 2013), the district court was faced with a similar claim in a habeas petition challenging BOP disciplinary proceedings. The

district court recognized that in cases where "a judgment in Petitioner's favor would not affect the fact or duration of Petitioner's incarceration, habeas relief is unavailable and a civil complaint was the appropriate form of remedy." *Id.* (quoting *Suggs v. Bureau of Prisons*, Civ. No. 08-3613, 2008 WL 2966740, at *4 (D. N.J. July 31, 2008)). As with the petitioner's claim in *Hill*, Petitioner's instant claim that the investigating officer and UDC violated his privacy rights, even if so found, would not imply the invalidity of Petitioner's disciplinary hearings. In fact, Petitioner's right of privacy contention is not a habeas corpus claim, rather it is a contention which is only properly brought in a civil rights complaint. Thus, with respect to this claim, "habeas corpus is not an appropriate or available remedy." *Hill*, 2013 WL 1386633 at *5 (quoting *Linnen v. Armainis*, 991 F.2d 1102, 1109 (3d Cir. 1993)).

### III. Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

_____
SYLVIA H. RAMBO
United States District Judge

Dated: February 7, 2014.